IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| HOWARD PAUL GARRISON, | |
| Petitioner, | No. 4:08-cv-00474-JAJ |
| vs. | |
| JERRY BURT, Warden,<br>Anamosa State Penitentiary, | **ORDER** |
| Respondent. | |

This matter comes before the Court pursuant to Howard Paul Garrison's ("Garrison") November 19, 2008 Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1). Garrison challenges convictions in state court for two counts of first-degree murder. In his petition for relief, Garrison claims that the trial information should have been dismissed because the prosecutor intentionally engaged in misconduct that forced a second trial, thereby violating the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Garrison also claims that prosecutorial misconduct infected the trial with unfairness so as to make his resulting conviction a denial of the Due Process Clause of the Fourteenth Amendment. Finally, Garrison argues that the evidence at trial was insufficient to prove that he committed two counts of first-degree murder, again resulting in a denial of due process. For the following reasons, the Court denies Garrison's § 2254 application.

## I. Procedural History

### A. First Trial

Garrison was charged by trial information on November 18, 2002, with the October 24, 2002, murders of Steve Emerson and John Caswell, Jr. The trial began on November 18, 2003, and ended on November 26, 2003. The jury found Garrison guilty of two

counts of murder in the first degree, and Garrison was thereafter sentenced on January 16, 2003, to two terms of consecutive life imprisonment. Garrison timely filed his first notice of appeal on January 20, 2003.

On January 19, 2006, the Iowa Court of Appeals reversed Garrison's convictions and remanded for a new trial. *State v. Garrison (Garrison I)*, No. 5-432/04-0141, 2006 Iowa App. LEXIS 25, at *56 (Iowa Ct. App. Jan. 19, 2006). The court concluded that because the State could not establish a personal or direct relationship between Garrison and witness Brian Martin, Martin's testimony regarding the defendant's sales of OxyContin was not relevant and therefore inadmissible. *Id.* at *31–32. As a result, the trial court should have granted Garrison's motion for mistrial "once the nature and extent of Martin's testimony concerning OxyContin and his lack of a prior relationship was known by the court and it had become apparent Martin's OxyContin testimony was not relevant to show a prior relationship with Garrison . . . ." *Id.*

## B. Second Trial

On May 23, 2006, Garrison filed a Motion to Dismiss the Trial Information and/or for Sanctions based on prosecutorial misconduct that necessitated a second trial.[1] [App. 3.] The court denied the motion and found that the State's prior conduct regarding the Martin testimony did not "intend to force a mistrial when it misinformed the Court that the defendant and Martin had a prior relationship." [App. 26-27.] The second trial began on October 23, 2006, and the jury returned a verdict of guilty on both counts on November 4, 2006. Garrison was sentenced on December 1, 2006, to two consecutive terms of life in prison. [App. 90.] Garrison timely filed his notice of appeal on December 5, 2006. [App. 92.]

---

[1]The Court refers to the Respondent's Submission of the State Court Documents. [Dkt. No. 10.] A majority of the material cited is taken from the "Defendant-Appellant's Appendix" Volumes I and II. The Court will cite directly to these appendices using the consecutive numbering already provided. *See*, *e.g.*, [App. #.]

The Iowa Court of Appeals affirmed Garrison's convictions on July 30, 2008. *State v. Garrison (Garrison II)*, 2008 Iowa App. LEXIS 539, at *20 (Iowa Ct. App. July 30, 2008). The court found that the lower court had properly denied the motion to dismiss because "granting a new trial was a sufficient remedy in this case." *Id.* at *6. The court also held that "the district court did not abuse its discretion [when it] den[ied] Garrison's motion for a mistrial based on the allegations of prosecutorial misconduct." *Id.* at *17. Finally, the court concluded that there was substantial circumstantial evidence for a jury to find Garrison guilty of the murders. *Id.* at *18–20.

Garrison made an application for further review on August 18, 2008 [Dkt. No. 10 ¶2h], which the Iowa Supreme Court denied on September 23, 2008. [Dkt. No. 10 ¶2i.] The Court issued procedendo on September 26, 2008. [Dkt. No. 10 ¶2j.]

## C. Federal Application for a Writ of Habeas Corpus

On November 19, 2008, Garrison filed his Petition for relief in this court. Garrison asserts three grounds for relief in support of his writ: (1) the trial information should have been dismissed because the prosecutor intentionally engaged in conduct that forced a second trial; (2) prosecutorial misconduct infected the trial with unfairness so as to make his resulting conviction a denial of due process; and (3) the evidence at trial was insufficient to prove that he committed two counts of first-degree murder.

On March 17, 2009, the Respondent filed a response to Garrison's Petition. [Dkt. No. 8.] Garrison filed a brief on the merits on August 18, 2009 [Dkt. No. 13], and on September 18, 2009, the Respondent filed a responsive brief. [Dkt. No. 15.] The Respondent also filed an appendix of relevant state court opinions and rulings on September 21, 2009. [Dkt. No. 16.] The Court finds that the matter is fully submitted and ready for decision.

## II. Factual Background[2]

The Iowa Court of Appeals concisely and judiciously reported the facts underlying

Petitioner's convictions as follows:

> Howard Garrison was charged with two counts of first-degree murder for the shooting deaths of John Caswell, Jr. and Steven Emerson.   Caswell   and   Emerson   manufactured methamphetamine at a farm outside Knoxville, Iowa. Garrison frequently   visited   the   farm,   where   he   smoked methamphetamine with the victims.
>
> Brian Martin testified that while he and Garrison were in jail together, Garrison told him he shot Caswell and Emerson because he was "tired of being ripped off." Garrison told Martin he and Emerson had a disagreement about the manufacture of methamphetamine and he got mad and shot Emerson.   Then, realizing Caswell probably heard the shots, Garrison waited for Caswell to appear and he shot him as well.
>
> Witnesses testified Garrison was at the farm on the morning of October 24, 2002, the day of the murders.   The murder weapon was a .22 caliber gun.   Witnesses stated Garrison owned a .22 Ruger, but it could not be found after the murders.  Garrison had ammunition consistent with that used in the killings.  One spent cartridge, which matched those from the murders, was found in the vent on the hood of Garrison's car.  Also, in Garrison's car officers found a plastic box with a foam insert which had the imprint of a shape that matched a .22 Ruger.  Garrison told witnesses he left the farm at noon, and Caswell and Emerson were alive then.   The County Medical Examiner Investigator testified, however, that the time of death for both men was about 11:00 a.m.

---

[2]The facts and evidence are summarized in the light most favorable to the prosecution. *Liggins v. Burger*, 422 F.3d 642, 647 (8th Cir. 2005); *Fenske v. Thalacker*, 60 F.3d 478, 480 (8th Cir. 1995).

*Garrison II*, 2008 Iowa App. LEXIS 539, at *1–2.

### III. STANDARDS OF REVIEW

A court shall allow an application for a writ of habeas corpus in certain circumstances. Title 28 U.S.C. § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Accordingly, "[s]ection 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001). Claims involving legal error are subject to a (d)(1) analysis, whereas factual error claims are governed by the standard in (d)(2). *Id.* at 1030. Section (e)(1) then subjugates the analysis to a "presumption of correctness in favor of state court findings of fact." *Id.*

### A. Standard of Review Under 28 U.S.C. § 2254(d)(1)

If a claim was adjudicated on the merits in state court, a federal court may grant a state habeas petitioner relief for a claim if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)); *see also Honeycutt v.*

*Roper*, 426 F.3d 957, 960 (8th Cir. 2005).   The Supreme Court further explains the statutory meaning of § 2254(d)(1) and the corresponding degree of deference courts should ascribe to state court decisions on the merits.   *See generally Rompilla v. Beard*, 545 U.S. 374, (2005);   *Williams v. Taylor*, 529 U.S. 362 (2000); *Bucklew v. Luebbers*, 436 F.3d 1010, 1015–16 (8th Cir. 2006).   Courts should "undertake only a limited and deferential review of underlying state court decisions." *Taylor v. Roper*, 561 F.3d 859, 862 (8th Cir. 2009); *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007).

     *Williams* established that a state court decision can be "contrary to" Supreme Court precedent in one or two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts [a group of] facts that are materially indistinguishable from a [decision of the Supreme Court] and [nevertheless] arrives at a result [in discord from that precedent]." *Williams*, 529 U.S. at 405–06.   In this case, the decision of the Iowa Court of Appeals would be "contrary to" clearly established federal law if the controlling Supreme Court cases require a "different outcome" or a "particular result." *See Long v. Humphrey*, 184 F.3d 758, 760 (8th Cir. 1999); *see also McReynolds v. Kemna*, 208 F.3d 721, 723 (8th Cir. 2000) (citing *Long*).

     There are two ways in which an "unreasonable application" of Supreme Court precedent can occur, as the Supreme Court explained:

> First, a state-court decision involves an unreasonable application of [the Supreme Court's] precedent if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case.   Second, a state-court decision also involves an unreasonable application of [the Supreme Court's] precedent if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Williams*, 529 U.S. at 407 (citations omitted); *see also Rompilla*, 545 U.S. at 380 (citations omitted) (discussing the "unreasonable application" prong of *Williams*); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (citations omitted) (same); *Bucklew*, 436 F.3d at 1016 (citations omitted) (same). Courts should refer to the holdings, instead of the dicta, in the Supreme Court's decision. *Yanez v. Minn.*, 562 F.3d 958, 962 (8th Cir. 2009) (quoting *Carey v. Musladin*, 549 U.S. 70, 74 (2006)).

Additionally, pursuant to § 2254(d)(1)'s "unreasonable application" clause, a federal court is constrained from issuing a "writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.    Rather, that application must also be *unreasonable.*" *Williams*, 529 U.S. at 411 (emphasis added).    "To be unreasonable, the state court's application of Supreme Court precedent 'must have been more than incorrect or erroneous.'" *Garcia v. Mathes*, 474 F.3d 1014, 1017 (8th Cir. 2007) (quoting *Wiggins*, 539 U.S. at 520–21); *see also Losh v. Fabian*, 2010 WL 6100, at *2 (8th Cir. Jan. 4, 2010) (citing *Evenstad v. Carlson*, 470 F.3d 777, 784 (8th Cir. 2006) ("for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on the point")).  Rather, the state court's application of the law "must be objectively unreasonable." *Christian v. Dingle*, 577 F.3d 907, 911 (8th Cir. 2009) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (state court's determination "of clearly established law must be objectively unreasonable."))*; Page v. Burger*, 406 F.3d 489, 493 (8th Cir. 2005) (citing *Green v. Norris*, 394 F.3d 1027, 1029 (8th Cir. 2005)); *Garcia*, 474 F.3d at 1017.

The Court must apply these standards to Garrison's claim and inquire whether the state court reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the court correctly identified the applicable principles of federal law but then unreasonably applied that law to the facts of Garrison's claims. *See,*

*e.g., Rousan v. Roper*, 436 F.3d 951, 955–56 (8th Cir. 2006) (discussing the applicable standards). Because the Iowa Supreme Court denied Garrison review, the Court applies the standards herein to the decision of the Iowa Court of Appeals, because it is the "last reasoned decision" of the state courts. *Mark v. Ault*, 498 F.3d 775, 783 (8th Cir. 2007) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991)).

## B. Standard of Review Under 28 U.S.C. § 2254(d)(2)

Federal habeas corpus relief may also be granted if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) (quoting 28 U.S.C. § 2254(d)(2)). State court findings enjoy a presumption of correctness. *Id.* (citing § 2254(e)(1)). "[I]t is well established that the factual determinations of the state court, including those by the state appellate court, are presumed to be correct." *de la Garza v. Fabian*, 574 F.3d 998, 1002–03 (8th Cir. 2009) (citing *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008)); *see also Perry v. Kemna*, 356 F.3d 880, 883 (8th Cir. 2004) ("The statute makes no distinction between the factual determinations of a state trial court and those of a state appellate court.") (quoting *King v. Bowersox*, 291 F.3d 539, 540 (8th Cir. 2002))).

Moreover, the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. § 2254(e)(1); *see also Middleton v. Roper*, 455 F.3d 838, 845 (8th Cir. 2006) (the court "bestow[s] a presumption of correctness on the factual findings of the state courts, and absent procedural error, [the court] may set such findings aside only if they are not fairly supported by the record."); *Cox v. Burger*, 398 F.3d 1025, 1028–29 (8th Cir. 2005) (quoting *Whitfield v. Bowersox*, 324 F.3d 1009, 1012 (8th Cir. 2003)). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030; *see*

8

*also Guinn v. Kemna*, 489 F.3d 351, 359 (8th Cir. 2007) ("invocation of the statutory language in a wrap-up paragraph does not meet [the] burden to rebut with clear and convincing evidence the presumption that the state court's findings are correct."). The petitioner must show by clear and convincing evidence "that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003) (citing *Boyd v. Minn.*, 274 F.3d 497, 501 n.4 (8th Cir. 2001)).

## C. Requirement of Exhaustion

Before a petitioner may obtain federal habeas corpus review of his state confinement, the petitioner must first "exhaust" his federal claims in the appropriate state forum. 28 U.S.C. § 2254(b)(1);[3] *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("[A] state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."); *Clay v. Norris*, 485 F.3d 1037, 1039 (8th Cir. 2007) (same); *Echols v. Kemna*, 511 F.3d 783, 785 (8th Cir. 2007) (same). State remedies are exhausted when the petitioner has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986);

---

[3]Title 28, United States Code, Section 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to to the judgment of a State court shall not be granted unless it appears that–
> (A) the applicant has exhausted the remedies available in the courts of the State, or
> (B) (I) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

*Armstrong v. Iowa*, 418 F.3d 924, 925 (8th Cir. 2005); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997); *see also* 28 U.S.C. § 2254(c).[4]  In order to exhaust all remedies in Iowa, a petitioner must seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an argument on direct appeal.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999), *abrogating Dolny v. Erickson*, 32 F.3d 381 (8th Cir. 1994)); *Randolph v. Kemna*, 276 F.3d 401, 403 (8th Cir. 2002).

To satisfy the fair presentment prong of the exhaustion requirement, a petitioner must "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Abdullah v. Groose*, 75 F.3d 408, 412 (8th Cir. 1996).  In order to be considered properly raised in state court proceedings, a petitioner must present a claim to the state courts on the same factual grounds and legal theories asserted in the applicant's federal habeas corpus application.  *Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir. 1995); *see also Interiano v. Dormire,* 471 F.3d 854, 856 (8th Cir. 2006); *Kerns v. Ault*, 408 F.3d 447, 449 n.3 (8th Cir. 2005) ("Kerns need not have cited to any particular federal case, but must have fairly apprized the state court of the facts and the substance of the federal claim.") (internal quotations omitted); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirements."); *Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir. 1994).  The habeas claim presented need not be an "exact duplicate" of the one raised in the state court proceeding, but the "federal claim cannot contain significant

---

[4]Title 28, United States Code, Section 2254(c) provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c).

additional facts such that the claim was not fairly presented to the state court . . . ." *Ward v. Norris*, 577 F.3d 925, 935 (8th Cir. 2009) (citations omitted).

"[The] exhaustion of state remedies requires that petitioners fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotations omitted). Claims are barred in federal court and must be dismissed if a petitioner has not fully presented his federal claims in state court, unless the application can demonstrate either good cause for his failure to present the claims and actual prejudice as a result of the alleged constitutional violation, or demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *see also Interiano*, 471 F.3d at 856 (quoting *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006)); *Keithley*, 43 F.3d at 1218; *Maynard v. Lockhart*, 981 F.2d 981, 984 (8th Cir. 1992).

Here, Garrison has presented the same issues as he presented to the Iowa Court of Appeals. Therefore, he satisfies both prongs of the exhaustion requirement—he has appealed to the highest state court necessary and has presented the same claims to the federal court as he did to the state court.

## IV. DISCUSSION

### A. Claim of Prosecutorial Misconduct

A prosecutorial misconduct claim presents mixed questions of law and fact. *Herrin v. United States*, 349 F.3d 544, 546 (8th Cir. 2003). It is only proper for a court to grant relief from prosecutorial misconduct when "(1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." *United States v. Bentley*, 561 F.3d 803, 809 (8th Cir. 2009) (quoting *United States v. Crumley*, 528 F.3d 1053, 1064 (8th Cir. 2008)); *accord United States v. Fuller*, 557 F.3d 859, 866

(8th Cir. 2009) (quoting *United States v. Robinson*, 439 F.3d 777, 780 (8th Cir. 2006)); *United States v. Christians*, 200 F.3d 1124, 1128 (8th Cir. 1999) (quoting *United States v. Malone*, 49 F.3d 393, 398 (8th Cir. 1995)); *United States v. Beckman*, 222 F.3d 512, 526 (8th Cir. 2000); *State v. Jacobs*, 607 N.W.2d 679, 689 (Iowa 2000) (recognizing that trial courts have broad discretion to determining whether misconduct was prejudicial). The court must look "within the context of the entire trial" to determine if a prosecutorial comment is improper. *Christians*, 200 F.3d at 1128 (citing *United States v. Eldridge*, 984 F.2d 943, 946 (8th Cir. 1993)).

Prosecutorial comments are improper when they "are likely to inflame bias in the jury and to result in a verdict based on something other than the evidence." *United States v. Crawford*, 523 F.3d 858, 861 (8th Cir. 2008) (quoting *United States v. Mullins*, 446 F.3d 750, 759 (8th Cir. 2006)). Furthermore, if a court finds the comments to be improper, then the court should conduct the following three-step analysis to determine if prejudice is present: "(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any curative actions taken by the trial court." *Id.* (quoting *United States v. Yu*, 484 F.3d 979, 986 (8th Cir. 2007)). The Supreme Court has held that prosecutorial misconduct from comments should not, "standing alone," overturn jury verdicts in otherwise fair proceedings. *Id.* (quoting *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

### 1. Prosecutorial Misconduct—Double Jeopardy Clause

Garrison maintains that the prosecutor engaged in misconduct, thereby necessitating a second trial and violating the Double Jeopardy Clause. He asserts that the trial court should have dismissed the charges because the prosecutor intended to provoke a mistrial. According to Garrison, the prosecutor's comments "regarding the relevancy of Martin's [OxyContin] testimony were at best, gross negligence, and at worse, intentional

wrongdoing." [Dkt. No. 1 at 20.] Garrison asserts that the Iowa Court of Appeals should have barred further prosecution because the court made "unreasonable determinations of facts regarding the intent of the prosecutor in light of the evidence presented in the state court proceedings." [Dkt. No. 13 at 29.]

Respondent contends that the trial court correctly determined that the mistake was not intentional. In support, Respondent states that the judge "presided over Garrison's first trial in 2004 . . . [and] was in the best position to assess the jury's reaction to the situation and to assess its importance in the context of the entire trial." [Dkt. No. 15 at 13.] Quoting extensively from the second direct appeal, the Respondent urges the Court to find that the Iowa courts were "not unreasonable in concluding that there was no basis to prohibit a retrial of Garrison on these double murder charges." *Id.* at 18.

This Court begins by analyzing the protections that the Double Jeopardy Clause affords defendants. The Clause protects a criminal defendant from being reprosecuted for the same offense. *United States v. Curry*, 328 F.3d 970, 972 (8th Cir. 2003) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)). However, the Clause does not act as a general bar against all repeated prosecutions after jeopardy attaches. *Curry*, 328 F.3d at 972 (quoting *United States v. Givens*, 88 F.3d 608, 611 (8th Cir. 1996)). So long as a defendant moves for a mistrial, the double jeopardy doctrine "does not bar retrial unless the prosecutor intentionally engaged in conduct designed to provoke the defendant's motion." *United States v. Washburn*, 444 F.3d 1007, 1010 (8th Cir. 2006) (quoting *Curry*, 328 F.3d at 972); *State v. Schwartz*, 541 N.W.2d 533, 537 (Iowa 1995).

Double jeopardy can bar reprosecution when prosecutorial misconduct arises. "[W]here the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial a defendant may raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon*, 456 U.S. at 676.

Iowa courts apply these same principles pursuant to the Iowa Constitution. *State v. Bell*, 322 N.W.2d 93, 94 (Iowa 1982). But comments that are sufficient to provoke a mistrial do not necessarily satisfy the element of intent, in order to prevent reprosecution based on the Double Jeopardy Clause. *United States v. Beeks*, 266 F.3d 880, 882 (8th Cir. 2001) (per curiam) (citations omitted). A court must make a finding that a prosecutor had subjective intent to "goad" a defendant into a mistrial. *State v. Rademacher*, 433 N.W.2d 754, 757 (Iowa 1988). As a result, without a prosecutor's intent to provoke a mistrial, an error in questioning, improper remarks in opening or closing statements, or even "extensive misconduct does not prevent reprosecution." *Id.*; *United States v. Radosh*, 490 F.3d 682, 685 (8th Cir. 2007) (quoting *Beeks*).

In this case, the Court first looks to the Iowa Court of Appeals decision for its analysis on the issue of prosecutorial misconduct leading to the assertion of the Double Jeopardy Clause:

> We conclude the trial court did abuse its discretion in denying Garrison's motion for mistrial once the nature and extent of Martin's testimony concerning OxyContin and his lack of a prior relationship with Garrison was known by the court and it had become apparent Martin's OxyContin testimony was not relevant to show a prior relationship with Garrison, or for any other purpose.

*Garrison I*, 2006 Iowa App. LEXIS 25, at *32. To cure this prejudice, the Iowa Court of Appeals reversed and remanded for further proceedings. *Id.* at *38. On the second direct appeal, the court then reviewed the lower court's ruling[5] on the motion to dismiss

---

[5]

> It is the belief of this Court, however, that the evidence overwhelmingly supports the notion that the mistake was not intentional. Once it became apparent that the defendant and Martin did not have a prior relationship, the State dropped the issue and did not mention it during its closing argument. Furthermore, when the defense requested a limiting instruction, the State did not object.

based on the intentional provocation of a mistrial and chose to "defer to the court that actually heard the evidence in question and considered the prosecutor's testimony at the hearing on the motion to dismiss." *Garrison II*, 2008 Iowa App. LEXIS 539, at *4–5.

The Iowa Court of Appeals acted reasonably in affirming the denial of the defendant's motion to dismiss. Here, Garrison cannot point to any "intent" on behalf of the prosecutor. There does not appear any motive for the prosecutor to intentionally cause a mistrial. Garrison asserts that the prosecutor should have known Martin lacked personal knowledge with his OxyContin testimony. Martin indicated at his deposition that before he was incarcerated with Garrison, that he had "seem him on a few occasions. . . . [But] I didn't know him, know him." [App. 103.] The prosecutor then argued to the judge—before commencing opening arguments—that Martin's testimony was relevant because Garrison confided in Martin while incarcerated because Martin had previously purchased OxyContin pills from Garrison. [App. 127.] Martin's testimony, however, revealed his lack of personal knowledge of Garrison's alleged OxyContin sales [App. 135], whereupon Garrison objected to the admission of Martin's OxyContin testimony. [App. 140.] The prosecutor defended Martin's testimony, asserting "It was the State's understanding that Mr. Martin initially had purchased OxyContin at some point from the defendant[,]" and also that another witness had relevant testimony that established a relationship between Garrison and OxyContin sales. [App. 142–43.] The prosecutor did not object to any curative instructions regarding Martin's personal relationship with Garrison. [App. 143–44.] The Court finds that the trial judge diligently and reasonably inquired into the prosecutor's misstatements.

---

> Based on the aforementioned facts, the Court concludes that the State did not intend to force a mistrial when it misinformed the Court that the defendant and Martin had a prior relationship.

*Garrison II*, 2008 Iowa App. LEXIS 359, at *4–5 (quoting district court).

15

The prosecutor made incorrect statements during opening arguments, reasonably believing that Martin's testimony would establish personal knowledge of Garrison's OxyContin sales.  Garrison has pointed to no evidence in the record that establishes that the prosecutor intentionally made the comments to mistry the case.  Comments must intentionally *goad* the defendant into moving for a mistrial, *Oregon*, 456 U.S. at 676, and mere comments alone are insufficient to satisfy the intent element.  *Beeks*, 266 F.3d at 882; *Curry*, 328 F.3d at 972 (no intent found when prosecutor made improper remarks during closing arguments).  The Court finds that there is no evidence that the prosecutor intended to cause a mistrial.  *Rademacher*, 433 N.W.2d at 685.  Because Garrison moved for a mistrial, without prosecutorial intent to engage in conduct provoking a mistrial, the Court finds that the Double Jeopardy Clause does not bar retrial.  *Washburn*, 444 F.3d at 1010.

Furthermore, the Iowa Court of Appeals reasonably found that the second trial cured the prejudice from Martin's statements.  As the presiding judge over the first trial also retried the second, the trial judge was in the best position to determine whether the prosecutor had intentionally provoked a mistrial.  A court only has a duty to make a "limited inquiry" and "[p]roof that the prosecutor knew of the comment would not prove an intent to elicit the comment to provoke a mistrial."  *Radosh*, 490 F.3d at 685 n.3 (finding that the court's remedy of excluding all "undisclosed statements from the second trial was an adequate remedy" for the prosecutor's prior error).  Accordingly, the Court finds that the prosecutor's remarks did not prejudice Garrison's rights in obtaining a fair trial, *Bentley*, 561 F.3d at 809, and the state court adjudication did not result in a decision that was contrary to, or involved an unreasonable application of Federal law or unreasonable determinations of facts.  *Honeycutt*, 426 F.3d at 960; *Beck*, 257 F.3d at 901.  This claim is denied.

### 2. *Prosecutorial Misconduct—Due Process Clause*

Garrison next asserts that prosecutorial misconducted infected his second trial with unfairness making the resulting convictions a denial of due process.  He alleges that there were two instances of prosecutorial misconduct: (1) when the prosecutor remarked during opening statements that a foam case appeared to have an impression of a gun, after the judge had explicitly instructed him against discussing a potential expert's testimony about the foam impression; and (2) when the prosecutor made reference to Garrison's first trial while examining Medical Examiner Marvin Van Haaften.  Garrison asserts that these statements unfairly prejudiced him and that the Iowa Court of Appeals "made unreasonable determinations of facts regarding the intent of the prosecutor's opening statement and his improper question . . . ." [Dkt. No. 13 at 34.]

Respondent asserts that Garrison's due process rights were not violated because there was no prejudice in his second trial.  The expert testimony about the foam gun impression was ultimately admitted and Garrison did not show that he suffered prejudice from the opening statement. [Dkt. No. 15 at 20, 22.] The trial court's ruling that the reference to the first trial was not a basis for a mistrial is similarly based on the argument that the alleged statement, while "dangerously close" to referencing a first trial, "did not cross the line." *Id.* at 26.  Thus, Respondent asserts that the analysis of the Iowa Court of Appeals was not unreasonable.

There are two requirements for a due process claim based on prosecutorial misconduct.  First, the defendant must show proof of misconduct, *State v. Piper*, 663 N.W.2d 894, 913 (Iowa 2003), and second, he must show that the misconduct resulted in prejudice to such an extent that he was deprived of a fair trial.  *Id.*; *United States v. Bryant*, 349 F.3d 1093, 1096 (8th Cir. 2003) (citing *United States v. Beeks*, 224 F.3d 741, 745 (8th Cir. 2000)).

As the Eighth Circuit Court of Appeals explained in *Barnett v. Roper*, 541 F.3d

804, 812–13 (8th Cir. 2008), a prosecutor's improper remarks can violate the Fourteenth Amendment if the remarks so "infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1386, 40 L.Ed.2d 431 (1974)). The court continued that habeas corpus relief should only be granted if the statements are so "inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." *Id.* (citations omitted). A court may only grant relief upon a showing of a reasonable probability that the outcome would have been different but for the improper statement." *Shurn v. Delo*, 177 F.3d 662, 667 (8th Cir. 1999); *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002).

A finding of prosecutorial misconduct hinges more on the misconduct's effect on the proceedings than what is actually said. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). Not every improper statement calls for a new trial or a reversal of the judgment of conviction. *United States v. Kenyon*, 481 F.3d 1054, 1066 (8th Cir. 2007) (quoting *United States v. Pierce*, 792 F.2d 740, 742 (8th Cir. 1986)). The comments must be so prejudicial that it "infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* Three factors are then used to assess the prejudicial impact on the defendant: "1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence; and 3) the curative actions taken by the district court." *United States v. Wadlington*, 233 F.3d 1067, 1077 (8th Cir. 2000); *Boesen*, 541 F.3d at 845; *Bryant*, 349 F.3d at 1096. Iowa courts consider two additional, but related factors, of 1) the significance of the misconduct to the central issues in the case and 2) the extent to which the state invited or instigated the misconduct. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

The Iowa Court of Appeals addressed Garrison's due process claim relating to the gun imprint in his second direct appeal and found the following:

> Prior to trial, Garrison filed a motion in limine seeking to prohibit the State from presenting evidence of the gun imprint in the foam in the plastic case. At that time the court ruled, "You can talk about they found the case but not about the impression testimony." In his opening statement, the prosecutor stated, "They also found a medical plastic case that when they opened it it appeared to have an impression in it, and an impression something looked like could have been a gun so they collected that piece of evidence. . . .
>
> The district court denied the motion for a mistrial. The court instructed the jury to disregard the prosecutor's statement. . . . [In a motion for new trial] [t]he [lower] court concluded Garrison was not prejudiced by the mention of the imprint of a gun in the plastic case, and was not entitled to a new trial on this ground. . . .
>
> We conclude the district court did not abuse its discretion in finding Garrison was not prejudiced by the prosecutor's conduct during the opening statement. The evidence concerning the gun imprint in the foam in the plastic case was discussed at length later in the trial, and Garrison was not prejudiced by the prosecutor's mention of the imprint during the opening statement.

*Garrison II*, 2008 Iowa App. LEXIS 539, at *14–16. In terms of the alleged reference to the first trial, the Iowa Court of Appeals found,

> Based on Garrison's motion in limine, the court ruled prior to the trial that the State could not present any evidence relating to the first criminal trial. During cross-examination of Van Haaften, Garrison made the point that during a deposition Garrison stated he took the temperatures of the bodies at about 2:00 p.m., but at first testified during the trial that he took the temperatures at 1:00 p.m. He later clarified to say he first saw the bodies at about 1:00 p.m., and did not take the temperatures until about 2:00 p.m.
>
> On redirect examination, the State asked Garrison about his

testimony during a deposition on April 30, 2003, and again in November 2003, that he took the temperatures of the bodies at 2:00 p.m. *The prosecutor then asked the question, "This wasn't the first time you came into court today to determine a time of death in this case, is that correct?"*

Garrison moved for a mistrial, claiming the prosecutor's statement clearly referred to the first criminal trial. The prosecutor explained he was asking about the prior depositions, when Van Haaften testified under oath as to the times in question. The district court ruled, "While dangerously close to a reference to a first trial, I don't believe it goes that far, and, therefore, the motion for mistrial is overruled." The court advised the jury to disregard the question. Additionally, the court ruled neither party could ask any more questions of Van Haaften, and he was excused. . . .

When viewed in context with the prosecutor's previous questions about Van Haaften's testimony during depositions, we agree with the court's conclusion that the question was not referring to the prior criminal trial. We conclude the district court did not abuse its discretion by denying Garrison's motion for a mistrial based on the allegations of prosecutorial misconduct.

n.3 Garrison also raises his claims of prosecutorial misconduct as a due process claim, asserting he was denied his due process right to a fair trial. Because we have found Garrison has not shown prosecutorial misconduct to the extent he was denied a fair trial, we also find he was not deprived of due process.

*Id.* at *16–18, 18 n.3 (emphasis added).

Here, the Court must first determine whether there was any proof of misconduct on behalf of the prosecutor in referencing the foam imprint of the gun and Van Haaften's prior testimony. *Bryant*, 349 F.3d at 1096. The trial court ruled that the prosecutor could

mention the "case but not about the impression testimony" [App. 205], but the prosecutor immediately thereafter made reference[6] to the gun impression. [App. 219.]  Garrison objected, stating that the court's ruling had been clear and suggested the remedies of a mistrial or a limiting instruction. [App. 220–21.]  The prosecutor defended his comment, saying that the impression was an explanation for why the case had been collected,[7] without delving into the expert witness's testimony. [App. 222.]  The court accepted the prosecutor's explanation but also struck his comment regarding any impressions in the plastic case. [App. 227.]

Garrison also objected to the prosecutor's redirect examination of Van Haaften. Garrison objected to the following statement, "This wasn't the first time you came into court today to determine a time of death in this case, is that correct?", alleging that the prosecutor was intentionally referencing the first trial. [App. 386–87.]  The prosecutor rebutted Garrison's assertion, pointing out that he was rehabilitating Van Haaften by referencing earlier occasions when Van Haaften had calculated the time of death under oath. [App. 388–89.]  The court overruled Garrison's motion for a mistrial, finding that "[w]hile dangerously close to a reference to a first trial, I don't believe it goes that far, . . ." [App. 391.]

The Court appropriately defers to the well supported state court finding that the

---

[6]"They also found a medical plastic case that when they opened it it appeared to have an impression in it, and an impression something looked like could have been a gun so they collected that piece of evidence." [App. 219.]

[7]

> The State's impression was they can say why they collected it [the gun] for evidentiary value.  And I believe the statement left with the jury was they thought it had [sic] impression of a gun is why they collected it.  I didn't get into Murillo's [the expert's] testimony, I didn't plan on getting into it.  I didn't say they said it was a .22 Ruger pistol in the plastic case.

[App. 222.]

prosecutor's redirect examination of Van Haaften was not made with intent to refer to the previous trial, but to previous occasions when Van Haaften had testified about the time of death. The prosecutor was also attempting to rehabilitate the credibility of the witness, *United States v. Papajohn*, 212 F.3d 1112, 1120 (8th Cir. 2000), *abrogated on other grounds by Crawford v. Wash.*, 541 U.S. 36, 64-65, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Van Haaften's testimony clarified that he had determined time of death at a deposition [App. 384] and previously under oath. [App. 385.] It is reasonable for the state courts to have found that the comments were not a reference to the prior trial.

The Court next examines prejudice, noting that new trials are not the solution for all improper statements. *Kenyon*, 481 F.3d at 1066. The gun case impression did not prejudice Garrison's right to a fair trial. Garrison cannot establish that the outcome "probably would have been different" but for the prosecutor's objectionable remarks, especially where the evidence at issue was later admitted by the court. *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). "Fleeting references" do not result in a trial unfairly prejudiced against the defendant. *See Fuller*, 557 F.3d at 866; *Rousan v. Roper*, 436 F.3d 951, 960 (8th Cir. 2006) (not prejudicial when "statement was brief, isolated, and followed a [relevant] discussion . . . ."). Likewise, when "strong evidence is presented against a defendant, minor missteps by the prosecutor do not warrant a new trial." *United States v. Cannon*, 88 F.3d 1495, 1503 (8th Cir. 1996); *Davis*, 417 F.3d at 912 (defendant could not show that remarks prejudiced him or that statements impacted overall fairness of trial). By objecting or requesting limiting instructions, defense counsel can also minimize any prejudice. *See generally Roberts v. Bowersox*, 137 F.3d 1062, 1066 (8th Cir. 1998). Both the gun case impression and Van Haaften's testimony was "fleeting" and conducive to curable instructions.

As such, the Court's application of the prejudice factors establishes that any misconduct did not result in prejudice and Garrison was not denied due process.

Cumulatively, the effect of the alleged misconduct was not substantial because comments must also be examined in the context of the trial and other evidence presented. *See generally Bryant*, 349 F.3d at 1096. Other circumstantial evidence supported the jury's verdict, as the Iowa Court of Appeals so found. *See Wadlington*, 233 F.3d at 1077. Lastly, the trial court implemented curative instructions that eliminated any perceived prejudice resulting from the prosecutor's statements. *See United States v. Johnston*, 353 F.3d 617, 624 (8th Cir. 2003). The prosecutor's statements did not prejudicially affect Garrison so as to deprive him of a fair trial. *Christians*, 200 F.3d at 1128; *Davis*, 154 F.3d at 784. Accordingly, the Court denies Garrison's request for relief on this ground.

## B. Claim of Insufficient Evidence

Garrison argues that the record contains insufficient evidence to support his convictions of first degree murder. Garrison asserts that there was no direct evidence that Garrison shot Caswell and Emerson, with the circumstantial evidence merely raising the inference or suspicion that Garrison was guilty. He argues that the State failed to prove with substantial evidence, his guilt beyond a reasonable doubt that he killed both Caswell and Emerson. Garrison urges this Court to find the evidence legally insufficient.

Respondent counters that the evidence is legally sufficient. Under Iowa law, a verdict may rely on circumstantial evidence and a jury could have concluded there was sufficient evidence to establish that Garrison murdered Caswell and Emerson. In support, Respondent asserts that Garrison's .22 Ruger gun matched the bullets recovered from the bodies; it was reasonable to conclude from the cartridge casings found at the scene that one person fired the shots; expert testimony established the foam gun imprint could have been made by Garrison's gun; Garrison was seen with his Ruger in the days before the murder, but not after; and a matching spent casing was found in the hood louver grillwork of Garrison's red Chevy Cavalier. [Dkt. No. 15 at 35–36.] Pointing to other circumstantial

evidence, Respondent urges the Court to find that the Iowa Court of Appeal's assessment that the evidence was sufficient "is not objectively unreasonable." *Id.* at 45.

A court reviews a challenge to the sufficiency of the evidence de novo. *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002). Facts and evidentiary conflicts must be resolved in the "light most favorable to the verdict," *United States v. Lewis*, 2010 WL 323356, at *2 (8th Cir. Jan. 29, 2010) (citing *United States v. Selwyn*, 398 F.3d 1064, 1065 (8th Cir. 2005)), and a court must accept "as established all reasonable inferences supporting the verdict." *Cruz*, 285 F.3d at 697 (quoting *United States v. Campa-Fabela*, 210 F.3d 837, 839 (8th Cir. 2000)). A reviewing court should not disrupt a conviction "[i]f the evidence rationally supports two conflicting hypotheses," *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004), and a court merely "draw[s] a different conclusion from it." *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State, Univ. of Iowa*, 763 N.W.2d 250, 257 (Iowa 2009).

The Court here reviews the Iowa Court of Appeal's determination of the sufficiency of evidence:

> The jury could have found Martin's testimony concerning Garrison's confession was credible. Furthermore, if the jury believed Van Haaften's testimony concerning the time of death, then Garrison's statements that he saw the victims alive when he left the farm at noon would not be credible.

> Other evidence also connected Garrison to the crimes. Garrison was at the scene of the crime in the timeframe when the murders were committed. He owned ammunition similar to that used in the murders. A spent cartridge found on the hood of his car matched the spend [sic] cartridges found at the scene of the murder. The murders were committed with a .22 caliber gun. Although witnesses had seen Garrison in possession of [a] .22 Ruger, it could no longer be found after the murders. Considering all of this evidence, we conclude there is sufficient evidence to support the convictions in this case.

24

*Garrison II*, 2008 Iowa App. LEXIS 539, at *18–20.

The Court finds that the jury could have reasonably believed that Garrison committed murder in the first degree. *Hayes*, 391 F.3d at 961. There was substantial circumstantial evidence linking Garrison to the crime and a reasonable jury could have found that Garrison met all the elements of the offense beyond a reasonable doubt. *Espino*, 317 F.3d at 794. The Court finds that because the decision of the Iowa Court of Appeals was neither contrary to clearly established federal law nor involved an unreasonable application of clearly established federal law, Garrison's request for relief on this ground is denied.

## V. CONCLUSION

The Court finds that Garrison is not entitled to relief pursuant to 28 U.S.C. § 2254, pursuant to the deferential standard the Court must apply. *Barnett*, 541 F.3d at 814. The Iowa courts' adjudication of Garrison's claims neither resulted in a decision contrary to, nor an unreasonable application of clearly established federal law. Likewise, the court's adjudication did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented.

Upon the foregoing,

**IT IS ORDERED**

That the Petitioner's November 19, 2008 Petition for Writ of Habeas Corpus [Dkt. No. 1] is denied. The Clerk of Court shall enter judgment in favor of the respondent.

**DATED** this 1st day of March, 2010.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA